642 A.2d 1126

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Jennifer PETERS.**

Superior Court of Pennsylvania.

Submitted April 18, 1994.

Filed June 7, 1994.

Petition for Allowance of Appeal Denied Oct. 12, 1994.

Mark S. Smith, Asst. Dist. Atty., Bellefonte, for Com., appellant.

Kyle W. Rude, Asst. Public Defender, Bellefonte, for appellee.

Before CAVANAUGH, WIEAND, McEWEN, CIRILLO, BECK, TAMILIA, KELLY, POPOVICH and SAYLOR, JJ.

TAMILIA, Judge:

The Commonwealth takes this appeal from the Order of October 9, 1992, suppressing certain evidence. We find the suppression court abused its discretion in this matter and, thus, we reverse its ruling.[1]

Initially, we note that when reviewing the Commonwealth's appeal from the decision of a suppression court, "we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. DeWitt*, 530 Pa. 299, 302, 608 A.2d 1030, 1031 (1992); *Commonwealth v. Elliot*, 416 Pa.Super. 499, 611 A.2d 727 (1992). When the evidence supports the suppression court's findings of fact, we may reverse only when the legal conclusions drawn from those facts are erroneous. *Elliot, supra.*

The facts of this case, viewed in conformity with the foregoing standard, are as follows. On June 25, 1992, Officer Richard Ososkie, of the State College Bureau of Police Services, responded to a call reporting a possible theft of money from a client of In–Home Care Services ("IHCS"). Upon his arrival at the IHCS office, Officer Ososkie was met by Ms. Pilione, supervisor of IHCS, and defendant, Jennifer Peters, an employee of IHCS. Ms. Pilione informed the officer that the client had called to report some lost or stolen money, in the amount of several thousand dollars. The client had been

---

1. The Commonwealth asserts that the Order in question substantially handicaps and/or terminates its prosecution, and, therefore, Superior Court has jurisdiction to hear this appeal. *Commonwealth v. Whitehead*, 427 Pa.Super. 362, 629 A.2d 142 (1993).

visited earlier in the day by defendant. Officer Ososkie was obtaining some biographical information from defendant when Ms. Pilione motioned him to a back office. In that office, away from defendant, Ms. Pilione informed the officer that when she received the theft report, she became nervous and went outside to check her vehicle, which was the IHCS vehicle defendant had used to visit the client. Checking the vehicle, Ms. Pilione spied several shopping bags from Hills Department Store in the vehicle filled with merchandise. Ms. Pilione confided to the officer that she had a "bad feeling" about the situation because defendant had complained that she had no money and yet she seemed to be able to afford a considerable amount of merchandise. Officer Ososkie then telephoned the victim and the district attorney's office, and while still on the telephone, Ms. Pilione walked into the back office with defendant and informed the officer that defendant just told her that she had found some money and was willing to show them where it was. Officer Ososkie looked over at defendant, who told him she found some money and it scared her, she didn't know what to do with it. Defendant also said, "And you can check, I'll get it for you, I'll give it to you. *You can go up and look in anything I have, look in the car.*" (N.T., 9/29/92, p. 7; emphasis added.) Officer Ososkie quickly terminated his telephone call and asked defendant where the money was, and she said it was in the IHCS vehicle in her purse. Once at the car, defendant reached into her purse and pulled out a handful of currency, handing it to Officer Ososkie. Officer Ososkie estimated that he was holding approximately $4,200, the vast majority in $100 denominations. Officer Ososkie asked defendant if that was all there was and defendant said it was. Believing that the amount in his possession did not match the amount reported missing, Officer Ososkie asked again if there was any more and defendant again said no. At that point, Ms. Pilione asked defendant where the merchandise in the Hills bags came from, as defendant did not have enough money to make all those purchases. Officer Ososkie then reached in to the bags and examined the receipts. When the officer informed defendant that $100 bills were tendered for the purchases, defendant put her head down and admitted, "I used

his money to buy the merchandise." Officer Ososkie was still under the impression more money was missing, and so he again asked defendant if that was it and she said yes. He asked if she minded if he searched her purse and she said, "Go right ahead." His search disclosed another $100 bill and a small amount of a green, leafy substance, later determined to be marijuana. Upon finding the $100, the officer asked, "Is this his too?" Defendant said yes and then handed the officer another $40, stating "This is also his." Defendant was then placed under arrest and taken to the police station and furnished with her *Miranda* [2] warnings, after which she provided a statement to the police. Defendant was charged subsequently with theft,[3] receiving stolen property,[4] possession of a controlled substance [5] and possession of a small amount of marijuana.[6]

A suppression hearing was held on September 29, 1992 before the Honorable Charles C. Brown, P.J., of the Court of Common Pleas of Centre County. Officer Ososkie and defendant testified at the hearing. On October 9, 1992, the suppression court granted defendant's motion to suppress, ordering that defendant's statements, *"made after Officer Ososkie requested Defendant to accompany him to the vehicle* on June 25, 1992, both verbal and written, and the evidence of items found in Defendant's purse and Hills Department Store bags on June 25, 1992, shall not be admissible during the Commonwealth's case-in-chief at the trial of this case." (Emphasis added.) The suppression court later stated:

In the case sub judice, it is clear that Officer Ososkie's first meeting with the Defendant at the IHCS building was a 'mere encounter.' Officer Ososkie was responding to a call to investigate a possible theft and only asked Defendant biographical type questions. However, it is the opinion of

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. 18 Pa.C.S. § 3921(a).

4. *Id.,* § 3925(a).

5. 35 P.S. § 780–113(a)(16).

6. *Id.,* § 780–113(a)(31).

this Court that after Officer Ososkie asked Defendant to accompany him to the vehicle, custodial detention had occurred.

(Slip Op., Brown, P.J., 10/9/92, p. 5.)   We disagree.

██ To the contrary, our examination of the record indicates that the suppression court's assertion that Officer Ososkie requested defendant to accompany him to the IHCS vehicle is belied by the uncontradicted testimony that defendant volunteered to the officer that the money was in her purse in the car and that he was free to look in the car and in any of her possessions.  Having determined that the court erred in this regard, we must also determine whether the conduct of Officer Ososkie prior to defendant's arrest necessarily implicated the protections of the fourth amendment.

To determine the lawfulness of the police conduct in the instant case, it is necessary to establish the nature of the contact which occurred between the police and appellee. . . . The types of contacts which occur between police and citizens were characterized by the Superior Court in *Commonwealth v. Brown*, 388 Pa.Super. 187, 565 A.2d 177 (1989), in the following manner:

> Encounters between the public and the police that do not involve a formal arrest may be categorized as mere encounters, non-custodial detentions, and custodial detentions.  *Commonwealth v. Ellis*, 379 Pa.Super. 337, 353, 549 A.2d 1323, 1331 (1988).  The term "mere encounter" refers to certain non-coercive interactions with the police that do not rise to the level of a seizure of the person under the fourth amendment.  For example, a "mere encounter" occurs if the police simply approach a person on a public street in order to make inquiries.  *See Commonwealth v. Hall*, 475 Pa. 482, 488, 380 A.2d 1238, 1241 (1977).

> On the other hand, both non-custodial detentions and custodial detentions are seizures of the person that trigger fourth amendment protection.  *See Dunaway v. New York*, 442 U.S. 200, 207–211, 99 S.Ct. 2248, 2253–2256, 60 L.Ed.2d 824 (1979); *see generally* 2 LaFave, Search and

Seizure § 5.1 (2d ed.1987) and 3 LaFave, Search and Seizure, §§ 9.1–9.6 (2d ed.1987). A non-custodial detention or "forcible stop" occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. *See Commonwealth v. Williams,* 287 Pa.Super. 19, 22, 429 A.2d 698, 700 (1981). In order to justify a forcible stop under the fourth amendment, the police must point to specific and articulable facts that, taken together with the rational inferences from those facts, reasonably indicate that criminal activity may be afoot. *See Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Custodial detention is a more severe form of government intrusion in which the conditions or duration of the police detention approximate the level of restraint associated with a formal arrest. *See Ellis,* 379 Pa.Super. at 356, 549 A.2d at 1332. In order to justify custodial detention, the police must have probable cause to believe that an offense has been or is being committed. *Dunaway v. New York,* 442 U.S. at 216, 99 S.Ct. at 2258.

*Id.* at 189–190, 565 A.2d at 178–179. See also: *Commonwealth v. Lidge,* 399 Pa.Super. 360, 366–367, 582 A.2d 383, 386 (1990); *Commonwealth v. Douglass,* 372 Pa.Super. 227, 238–239, 539 A.2d 412, 417–418 (1988).

*Commonwealth v. Bennett,* 412 Pa.Super. 603, 612–13, 604 A.2d 276, 280–281 (1992).

Generally, a seizure was thought to have occurred, for purposes of triggering constitutional protection, if the officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen...". *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). The test to determine whether a sufficient restraint of personal liberty has occurred was first formulated in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). To distinguish between a constitutionally significant seizure and an [sic] police-citizen encounter without fourth amendment implications, the *Mendenhall* court noted the following:

The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

\* \* \* \* \* \*

*We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.* Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*United States v. Mendenhall,* 446 U.S. at 553–54, 100 S.Ct. at 1877, 64 L.Ed.2d at 509 (citations omitted) (emphasis supplied).

*Commonwealth v. Harper,* 416 Pa.Super. 608, 616–17, 611 A.2d 1211, 1215 (1992).

Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions. *Commonwealth v. Bybel,* 399 Pa.Super. 149, 158, 581 A.2d 1380, 1385 (1990); *Douglass, supra* at 245, 539 A.2d at 421. The fact that a defendant was the focus of the investigation is also a relevant factor in

determining whether he was "in custody," but does not require, per se, *Miranda* warnings. *Bybel, supra; Commonwealth v. Fento,* 363 Pa.Super. 488, 526 A.2d 784 (1987).

■ We find Officer Ososkie's initial contact with defendant was a "mere encounter," to which no fourth amendment protection attaches. At the time defendant volunteered to take the officer to the car, show him the money and allow him to search both the car and her possessions, Officer Ososkie had not adopted Ms. Pilione's "bad feeling" and was attempting to contact the victim by telephone. At no time did the officer demand that defendant take him to her car and/or let him search her purse. The officer's conduct did not emanate from his own animus but was triggered by defendant's voluntary acquiescence to search the car and her possessions.

■ Similarly, we find Officer Ososkie's subsequent actions until the time of defendant's arrest did not elevate the contact from a "mere encounter" to a "noncustodial detention" triggering a "seizure" within the meaning of the fourth amendment. We find the officer's actions constituted a minor governmental intrusion which did not consist of any threatening police presence, display by the officer of his weapon, physical touching of defendant or compelling tone of voice or language. *Mendenhall, supra; Harper, supra.* The statement by defendant that she "found money," coupled with her willingness to show the officer the money, fell short of an admission or inference that she had committed a theft. The officer, exercising reasonable caution not to be accusatory without further information, complied with defendant's offer to examine the car and its contents. Doing only what she offered without duress or threat, defendant cannot now claim she was under police detention.

For the foregoing reasons, we find all of defendant's statements made prior to her arrest, as well as the evidence found in her purse and shopping bags, are admissible at trial.

Case reversed and remanded for trial in accordance with this Opinion.

Jurisdiction relinquished.