**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jeffrey Alan YASHINSKI, Appellant.**

Superior Court of Pennsylvania.

Submitted March 25, 1998.

Filed Dec. 1, 1998.

James F. Donohue, Butler, for appellant.

James R. Gilmore, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before POPOVICH, ORIE MELVIN and BROSKY, JJ.

BROSKY, J.

This is an appeal from a judgment of sentence imposed upon appellant after he was convicted in a bench trial of Driving Under the Influence. Appellant raises two questions for our review, which we restate as follows: whether the court erred in not concluding that the stop of his vehicle was without reasonable suspicion or probable cause, and whether the Pennsylvania State Police illegally stopped his vehicle by using a Pennsylvania Turnpike Toll Plaza as an illegal roadblock? We vacate and remand.

The larger factual premise is not at issue. At approximately 2:00 A.M. on November 19, 1995, Trooper Duane Gibson and his partner were occupying the only two open tollbooths at the Monroeville entrance to the Pennsylvania Turnpike. Appellant drove up to the tollbooth that Trooper Gibson occupied and

took a ticket from the automatic dispenser. At that time Trooper Gibson inquired of appellant "how are you doing, or where are you coming from?" (Tr. T. 5). Appellant responded that he was going to Oil City and that he was lost. Trooper Gibson began to instruct appellant how to get to Oil City but during the conversation developed the suspicion that appellant was operating the vehicle under the influence of alcohol.[1] Appellant was then directed to pull the vehicle over to the side in a well-lit area where he was asked to perform field sobriety tests. In Trooper Gibson's estimation appellant did not satisfactorily perform the tests and appellant was taken to a nearby hospital for a blood alcohol test which revealed a .173 BAC.

Appellant was charged, by criminal information, with three counts of driving under the influence at 75 Pa.C.S.A. § 3731(a)(1), (a)(4), and (a)(5). The Commonwealth dismissed the count for violating subsection (a)(5) prior to trial. Appellant filed a suppression motion which was heard immediately prior to a scheduled bench trial. Appellant's motion was denied and appellant proceeded to the bench trial which resulted in his conviction of the two remaining counts of DUI. The present appeal followed.

Appellant contends, in essence, that he was subjected to an improper roadblock when Trooper Gibson questioned him as he retrieved a ticket from the automatic dispenser. We agree.[2]

A review of the testimony from the bench trial indicates that Trooper Gibson and his partner systematically engaged the drivers entering the turnpike in conversation. This brief encounter, at least in the case of our appellant, and presumably with most, if not all, of the other drivers entering the turnpike, provided the Trooper sufficient contact with the appellant to presumptively determine that he might be operating the vehicle under the influence of alcohol. The lower court may have been inclined to believe the rather incredulous explanation of Trooper Gibson that, in systematically engaging drivers in conversation, he and his partner were performing "public relations" activities for the Pennsylvania State Police as opposed to seeking drunk drivers. Nevertheless, in our opinion such a course of conduct describes a *de facto* roadblock regardless of intent.

A "roadblock" has been characterized as a "systematic program of checking vehicles or drivers." 75 Pa.C.S.A. § 6308(b). Further, our Supreme Court, in discussing the case of *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), used the following language to describe conduct which was considered a roadblock in that case, the "routine stopping of a vehicle for brief questioning of its occupants...." *Commonwealth v. Tarbert*, 517 Pa. 277, 287, 535 A.2d 1035, 1040 (1992). Regardless of intent and/or the presence of reasonable suspicion, or the lack thereof, this is precisely what Trooper Gibson was engaged in.

As mentioned earlier, Gibson testified that as appellant stopped to take a ticket he asked him "how he was doing, or where are you coming from." (T. 5). Gibson further indicated that appellant wasn't the only individual he engaged in this fashion, rather Gibson stated "I speak to just about everyone that goes through." (T. 7). As such, Gibson and his partner were engaged in a process of the "routine stopping of a vehicle for brief questioning of its occupants." The Commonwealth and the lower court are quick to point out that Trooper Gibson never ordered appellant to stop and never indicated that he was not free to leave.[3] However, in our opinion this is immaterial.

---

1. Trooper Gibson testified that he smelled alcohol emanating from appellant and that appellant exhibited slurred speech. Trooper Gibson also observed an open case of beer inside the truck and observed that appellant had "extremely bloodshot eyes."

2. In light of our conclusion as to appellant's second issue we need not address the first issue. However, we would note that in light of the trial court's factual findings the encounter between

appellant and Trooper Gibson would likely be deemed a "mere encounter" which does not require any suspicion of criminal activity for justification. *See, Commonwealth v. Peters*, 434 Pa.Super. 268, 642 A.2d 1126 (1994).

3. This point was contradicted by appellant and his passenger. Appellant and his passenger both testified that appellant took a ticket and began to pull away from the booth at which time they were directed to "stop." Upon seeing that it was

The definition of a roadblock does not state that the systematic checking must be done under a threat of force or some other form of compulsion. To the extent the questioning of drivers coming through the tollbooths effectively provided brief contact with most of them it would serve the same purpose. Further, this argument ignores the reality of the circumstances. The overwhelming majority of lay people do not feel free to simply ignore a police officer's questions and continue driving along. We recognized a similar concept in *Commonwealth v. Zogby*, 455 Pa.Super. 621, 689 A.2d 280 (1997), where we stated "[t]he reality of the matter is that when a police officer requests a civilian to do something, even something as simple as 'move along,' it is most often perceived as a command that will be met with an unpleasant response if disobeyed." *Id.*, 689 A.2d at 282.

No less an authority than Justice Stevens of the United States Supreme Court has stated "[r]epeated decisions by ordinary citizens to surrender that interest [the right to refuse consent to a search] cannot be satisfactorily explained on any hypothesis other than an assumption that they believed they had a legal duty to do so." *Ohio v. Robinette*, 519 U.S. 33, ——, 117 S.Ct. 417, 425, 136 L.Ed.2d 347 (1996) (Dissenting Opinion). These observations demonstrate that a police officer need not officially "stop" a vehicle to effectuate the investigative purpose, it is enough if they ask a question of a motorist because, except for the brashest of motorists, the ordinary motorist will feel compelled to stop and respond.

In light of the above we have little difficulty in concluding that, regardless of Trooper Gibson's testimonial characterization of the practice engaged in that early morning of November 19, 1995, for all intents and purposes the net effect of that practice was a systematic stopping and investigation of drivers coming through the tollbooths. As such, it was a "roadblock." Although "roadblocks" are legal in Pennsylvania they must be conducted according to the specifications set forth in our Supreme Court's cases of *Commonwealth v. Tarbert, supra*, and *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177 (1992). The Commonwealth does not contend that there was compliance with these dictates and it is quite clear that there was no compliance.

Consequently, in our opinion, the stop was illegal and the results of the stop should have been suppressed.

For the above reasons we vacate the judgment of sentence and remand for a new trial. Consistent with the above analysis, the incriminating evidence derived from the encounter between appellant and Trooper Gibson must be suppressed.

Judgment of sentence vacated, remanded for new trial. Jurisdiction relinquished.

ORIE MELVIN, J., files a Dissenting Opinion.

ORIE MELVIN, J., dissenting:

The majority holds that the Pennsylvania State Police illegally stopped appellant's vehicle by using a turnpike toll plaza as a roadblock. It concludes the trooper stopped the vehicle by virtue of the fact he greeted appellant and asked him where he was coming from. Because I believe the trial court was correct in its assessment of this encounter as a "mere casual conversation between a police officer and a motorist" I dissent.

The record reveals that Trooper Gibson was located at the toll plaza as part of standard police procedure that requires an officer to go through each interchange within his jurisdiction at least once during a shift. While at the toll plaza and as appellant was already stopped to take a ticket, Trooper Gibson asked him either how he was doing or where he was coming from. Trooper Gibson testified that he greeted almost all drivers in this manner. Trooper Gibson was not stopping vehicles for inspection or asking the occupants for their driver's license or registration. He was merely greeting them and engaging in casual conversation.

a trooper that had ordered him to stop appellant indeed stopped and answered the trooper's questions. Speaking quite frankly, appellant's version of the facts seems at least as credible as Trooper Gibson's version. Nevertheless, we are bound by the factual findings of the suppression court, as there is evidentiary support for them.

The majority finds Trooper Gibson engaged in a practice of systematic stopping and investigation of drivers coming through the tollbooths. Although the trial court found that appellant was not stopped by Trooper Gibson, the majority finds this fact immaterial. However, under the majority definition of a roadblock Trooper Gibson must have been engaged in a routine stopping of vehicles. Appellant's pause at the tollgate was caused merely by the fact he had to obtain a ticket. At that point a casual question was asked. Appellant could have continued without further contact or any response. Instead, Appellant chose not only to respond to Trooper Gibson's question but asked him for directions for his destination. Trooper Gibson simply did not stop appellant's vehicle.

The majority's holding is premised on the belief that questioning by a police officer, even such non-threatening questions like "how is it going," constitutes a stop because most lay people do not feel free to ignore an officer's questions. However, such a conclusion is based on mere speculation. Citizens may voluntarily cooperate with police out of a natural sense of obligation, civic duty, or simple common courtesy. *Commonwealth v. Hoak*, 700 A.2d 1263, 1268, n. 5 (Pa.Super.1997). *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 247, 93 S.Ct. 2041, 36 L.Ed.2d 854(1973) (stating "[t]here is no reason to believe ... that the response to a policeman's question is presumptively coerced"). Furthermore, the majority's holding flies in the face of legal precedent which holds that not all personal intercourse between police officers and citizens involve seizures of persons. *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968) (indicating a police uniform, as a symbol of authority, is not in itself a sufficient exercise of force to conclude a stop occurs when a citizen is approached and questioned). To characterize a toll plaza as a *de facto* roadblock because appellant engaged in polite conversation with Trooper Gibson ignores this well-established legal principle. In conclusion because I believe Trooper Gibson's presence at the tollbooth and his greeting of motorists did not transform the toll plaza into a roadblock, I would affirm appellant's judgment of sentence.