J.S36033/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: M.A., A MINOR,  :    IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA
                                          :
                                          :
                                          :
APPEAL OF: M.A., A MINOR,        :
                                          :      No. 2530 EDA 2013

Appeal from the Dispositional Order August 1, 2013
In the Court of Common Pleas of Philadelphia County
Juvenile Division No(s).: CP-51-JV-0000604-2013

BEFORE: GANTMAN, P.J., JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:        **FILED DECEMBER 03, 2014**

Appellant, M.A., appeals from the dispositional order entered in the Philadelphia County Court of Common Pleas following a dispositional hearing and a finding of delinquency for two violations of the Uniform Firearms Act, specifically carrying a firearm without a license[1] and possession of a firearm by a minor.[2] Appellant contends the police lacked reasonable suspicion to stop him and seize the firearm. We affirm.

We state the facts as set forth by the juvenile court.

> On February 13, 2013[,] at approximately 8:16PM, Philadelphia Police Officer Brian McCarthy . . . responded to a radio call for gunshots in the area of 43rd Street and

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6106.

[2] 18 Pa.C.S. § 6110.1.

Fairmount Avenue. Officer McCarthy approached the area of 43rd and Wallace Streets, which is one block away from 43rd and Fairmount Avenue. . . . It took Officer McCarthy approximately one minute to arrive at 43rd and Wallace Streets. At the time, Officer McCarthy had worked in the area of 43rd and Wallace Streets for approximately six years. Officer McCarthy described the area as a "very high crime area, with lots of narcotics, shootings [and] robberies."

When Officer McCarthy arrived at 43rd and Wallace Street, he observed three black males walking away from the area where gunfire had been reported one minute prior. Said males matched the descriptions of the perpetrators of previous gunpoint robberies in said area. Officer McCarthy had received a packet of "flash information" describing five different robberies all in the same area within the preceding week, committed by black males wearing hoodies and black jackets. Officer McCarthy was travelling in a marked police vehicle.

As Officer McCarthy exited his vehicle [and before he could say anything,] the three males ran. One male ran westbound on Wallace Street. Officer McCarthy pursued [Appellant] and another male, as they ran eastbound on Wallace Street. . . . Officer McCarthy continued to pursue [Appellant] into an alleyway. The officer followed [Appellant] through said alleyway, which led to an open field. While running, [Appellant] turned and discarded a silver gun from his waistband. Officer McCarthy clearly observed [Appellant] pull the silver firearm from his right, front waistband. [Appellant] continued to run for a distance of ten feet and then stopped, at which point Officer McCarthy was able to apprehend [Appellant]. Officer McCarthy then recovered the firearm, a .380 caliber semiautomatic handgun loaded with five rounds and one round in the chamber, and placed said firearm on Property Receipt number 3080538. Upon arresting [Appellant], Officer McCarthy recovered an Apple-stamped plastic bag, containing six live rounds, and he placed said items on Property Receipt number 3057206. At the time of the arrest, [Appellant] was dressed in a dark blue jacket, blue hoodie, and black pants.

Officer McCarthy stopped [Appellant] because [he] was walking away from the area of gunfire and also because [Appellant] matched the description of the perpetrator of a previous robbery or robberies. While the descriptions of the perpetrators in each crime varied, most of the descriptions referenced black males in dark hoodies. There was no height description as part of the descriptions of the perpetrators. The other male that was walking with [Appellant] was wearing a black, puffy jacket, which also matched the description of one of the robbers. Officer McCarthy conceded that the males of said vicinity generally wear dark clothing, puffy jackets, and hoodies. However, Officer McCarthy explained that he stopped [Appellant] based on the area, the clothing, and the number of males that were with [Appellant] in the group, in light of the flash information. The males ran as soon as Officer McCarthy opened his car door, prior to Officer McCarthy saying a word.

The parties stipulated that the firearm recovered was submitted to the Firearm Identification Unit and determined to be operable. [Appellant] never produced a license to carry a firearm. The Commonwealth presented a Certificate of Non-Licensure for [Appellant].

Juvenile Ct. Op., 1/13/14, at 2-4 (unpaginated) (citations omitted). The record does not explicitly state whether Officer McCarthy ordered Appellant and the other male to stop during the pursuit. Given that Appellant stopped running after ten feet, we may presume Officer McCarthy commanded Appellant to stop. *See id.* at 3 (noting that Appellant stopped running while in alleyway or open field).

On May 23, 2013, Appellant moved to suppress the gun, reasoning that the police lacked a basis to stop him. The court denied Appellant's motion and subsequently found Appellant delinquent. On August 1, 2013, the court placed Appellant on probation pursuant to a Youth Violence

Reduction Partnership, with home schooling subject to global positioning system monitoring and house restrictions.

Appellant timely appealed, and on September 19, 2013, the court ordered Appellant to comply with Pa.R.A.P. 1925(b) within twenty-one days. On Friday, October 11, 2013, Appellant filed his Rule 1925(b) statement one day past the deadline.[3] In his Rule 1925(b) statement, Appellant alleged the police lacked **probable cause** to stop him thus making any resulting seizure "fruit of the poisonous tree." Appellant's Pa.R.A.P. 1925(b) Statement, 10/11/13 (emphasis added).

In his brief, Appellant raises the following issue:

> Whether the suppression court erred in finding that the police had **reasonable suspicion** to stop, investigate [Appellant], and that the unprovoked flight of [Appellant] gave the officer authority to chase and arrest [Appellant and] to seize[ ] the firearm he discarded during the chase?

Appellant's Brief at 1 (emphasis added).[4] Appellant argues that the police had no description of the perpetrators of the gunfire that night and only a clothing description of the perpetrators of the prior robberies. He posits that the clothing description could not establish probable cause or justify an

---

[3] We decline to find waiver, however. **See** Pa.R.A.P. 1925(c)(3); **Commonwealth v. Britt**, 83 A.3d 198, 203 (Pa. Super. 2013) (holding untimely filing of Rule 1925(b) statement by counsel is *per se* ineffective assistance of counsel).

[4] Although "probable cause" is materially different than "reasonable suspicion," we decline to find waiver.

investigatory stop. Appellant maintains there was no reasonable suspicion justifying his seizure. He opines his seizure occurred as soon as he fled the police. Appellant suggests that the firearm should have been suppressed because the police lacked probable cause or reasonable suspicion under Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution. We hold Appellant is due no relief.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Where the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*In re J.E.*, 937 A.2d 421, 425 (Pa. 2007) (citations omitted). In evaluating the legal conclusion drawn by the suppression court, this Court may also consider uncontradicted testimony from the suppression hearing not included in the suppression court's findings of fact.[5] *Commonwealth v. Mendenhall*, 715 A.2d 1117, 1119 n.1 (Pa. 1998).

---

[5] We acknowledge the holding of *In re L.J.*, 79 A.3d 1073 (Pa. 2013), that after October 30, 2013, the scope of review for a suppression issue is limited to the record available to the suppression court. *Id.* at 1085, 1089 (stating holding applies to "all litigation commenced Commonwealth-wide after the filing of this decision"). Because the instant delinquent petition was filed prior to October 30, 2013, *In re L.J.* does not apply.

Both the Fourth Amendment of the United States Constitution and Article 1 Section 8 of the Pennsylvania Constitution protect citizens from unreasonable, searches and seizures. The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. The Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8. Warrantless searches and seizures are therefore unreasonable *per se*, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement.

*     *     *

The Pennsylvania Supreme Court has been vigilant in the protection of the right to privacy guaranteed by Article I, Section 8 of our state Constitution. On repeated occasions, the Court has admonished that:

> The seriousness of criminal activity under investigation, whether it is the sale of drugs or the commission of a violent crime, can never be used as justification for ignoring or abandoning the constitutional right of every individual in this

> Commonwealth to be free from intrusions upon his or her personal liberty absent probable cause.
>
> **Commonwealth v. Polo**, 563 Pa. 218, 226, 759 A.2d 372, 376 (quoting **Commonwealth v. Matos**, 543 Pa. 449, 672 A.2d 769, 775-76 (1996)).
>
> To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive.

**Commonwealth v. Ayala**, 791 A.2d 1202, 1207-08 (Pa. Super. 2002) (*per curiam*) (punctuation marks and some citations omitted).

> Initially we note that Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Ellis**, 662 A.2d 1043, 1047 (Pa. 1995) (citations and footnote omitted).

The Pennsylvania Supreme Court has established the objective **Jones/Mendenhall**[6] standard "in determining whether the conduct of the police amounts to a seizure or whether there is simply a mere encounter

---

[6] **United States v. Mendenhall**, 446 U.S. 544 (1980); **Commonwealth v. Jones**, 378 A.2d 835, 839 (Pa. 1977).

between citizen and police officer." ***Commonwealth v. Matos***, 672 A.2d 769, 774 (Pa. 1996).

> In [***Commonwealth v. Hicks***, 253 A.2d 276 (Pa. 1969)], this Court adopted the United States Supreme Court's decision in ***Terry v. Ohio***, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), which permits a police officer to effect a precautionary seizure where the police have a reasonable suspicion that criminal activity is afoot. ***Terry***, and by analogy ***Hicks***, recognized that there are some instances in which an individual may not be arrested, but will still be considered to be "seized." In ***Jones***, this Court adopted an objective standard for determining what amount of force constitutes the initiation of a ***Terry*** stop: whether a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes. This case, which preceded the United States Supreme Court's decision in . . . ***Mendenhall***, . . . was a precursor to the so-called "***Mendenhall***" test posited by the United States Supreme Court: "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave."

> The ***Jones***/***Mendenhall*** standard has since been consistently followed in Pennsylvania in determining whether the conduct of the police amounts to a seizure or whether there is simply a mere encounter between citizen and police officer.

***Matos***, 672 A.2d at 773-74 (punctuation and some citations omitted).

The Pennsylvania Supreme Court provided further guidance in applying this "totality of the circumstances" test:

> In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach,

with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

***Commonwealth v. Strickler***, 757 A.2d 884, 890 (Pa. 2000) (footnotes and some citations omitted). Factors examined in this totality-of-the-circumstances approach include "all circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." ***Mendenhall***, 715 A.2d at 1119.[7] This Court also set forth a non-exclusive list of factors:

> [T]he number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

***Commonwealth v. Collins***, 950 A.2d 1041, 1047 n.6 (Pa. Super. 2008) (*en banc*) (citation omitted).

No Fourth Amendment violation occurs "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away, [as] there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective

---

[7] The defendant in the Pennsylvania Supreme Court ***Mendenhall*** case has no connection to the defendant in the United States Supreme Court ***Mendenhall*** case.

justification." ***Commonwealth v. Peters***, 642 A.2d 1126, 1129 (Pa. Super. 1994). Following that precept, our courts have held that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." ***Commonwealth v. Cooper***, 994 A.2d 589, 592 (Pa. Super. 2010) (citation omitted).[8] For example, a plainclothes officer displaying a badge, accompanied by a request to step aside for a conversation, generally does not, without more, constitute a seizure. ***Florida v. Rodriguez***, 469 U.S. 1, 5-6 (1984).[9]

In contrast, "[i]f a citizen approached by a police officer is ordered to stop or is physically restrained, obviously a 'stop' occurs." ***Jones***, 378 A.2d

---

[8] In ***Cooper***, this Court examined whether

> the police's actions, upon approaching [the defendant], rose to the level of an investigative detention. . . . The evidence presented at the suppression motion suggests only that the officer exited his vehicle and approached [the defendant] with the intention of asking him questions. There was no evidence presented that the officer drew his weapon or commanded [the defendant] to remain in place before [the defendant] made his movements[, "belat[ing] his body backwards towards his left side and reach[ing] for his pocket."]. Accordingly, we conclude that the officer subjected [the defendant] to only a mere encounter prior to frisking him.

***Cooper***, 994 A.2d at 592.

[9] In ***Rodriguez***, plainclothes officers at an airport approached a suspect, who "saw them approaching and then attempted to move away but was mainly running in place, and an officer then displayed his badge and asked if they could talk, to which defendant agreed[.]" 4 Wayne R. LaFave, Search and Seizure § 9.4(a) n.18 (5th ed. 2012) (summarizing ***Rodriguez***, ***supra***).

at 839.  In *In re D.M.*, 781 A.2d 1161 (Pa. 2001), our Supreme Court stated that the "**pursuit** of [a defendant] by police officers amount[s] to a seizure.  Thus, the officer must demonstrate either probable cause to make the seizure or reasonable suspicion to stop and frisk."  *Id.* at 1164 (citation and footnote omitted).  The *In re D.M.* Court addressed the propriety of a seizure when the police approached a suspect matching a description given via a radio call, and the suspect fled in response to a police directive to approach.  *Id.* at 1162.  The Court concluded that "flight was clearly relevant in determining whether the police demonstrated reasonable suspicion to justify a *Terry* stop under the totality of the circumstances."  *Id.* at 1165.

In sum, the question of "whether the police needed some level of requisite cause **at the time** they **initially** approached" the defendant is "governed by the type of encounter that the **police initiated** when they approached" the defendant.  *Id.* at 1164 (emphases added).  The critical inquiry is what type of encounter the police initiated at the time they initially approached the defendant.  *See id.*  After identifying the type of encounter—*e.g.*, mere encounter, investigative detention, or custodial detention—this Court must then determine whether the police had the requisite cause for that encounter, respectively, *e.g.*, no suspicion required, reasonable suspicion that criminal activity was afoot, or probable cause for an arrest.  *See Ellis*, 662 A.2d at 1047; *Jones*, 378 A.2d at 839 n.4.

Instantly, the record substantiates the juvenile court's determination that Appellant was walking with two males in a high crime area around 8:00 p.m. Juvenile Ct. Op. at 2-3. Officer McCarthy, while driving a marked police vehicle, approached the three males. *Id.* At this juncture, no seizure occurred; Officer McCarthy did not command the three males to remain stationary or draw his weapon. *Cf. Rodriguez*, 469 U.S. at 5-6; *Cooper*, 994 A.2d at 592. There was no "official compulsion to stop or to respond." *Ellis*, 662 A.2d at 1047. Under these facts, had Officer McCarthy begun questioning the males, they would have remained free to walk away. *See Cooper*, 994 A.2d at 592; *Peters*, 642 A.2d at 1129. Unlike the facts in *Rodriguez*, however, Officer McCarthy did not say anything, because upon seeing Officer McCarthy exit the vehicle, all three males fled: one male fled westbound and Appellant and the third male fled eastbound. *See* Juvenile Ct. Op. at 3.

Officer McCarthy immediately pursued Appellant and the third male east. Although the record does not explicitly indicate whether Officer McCarthy ordered Appellant and the other male to stop, it is implied. *See id.* at 3. At the moment when Officer McCarthy initiated pursuit, and presumably commanded Appellant to stop, a seizure occurred. *See In re D.M.*, 781 A.2d at 1164; *Matos*, 672 A.2d at 771; *Jones*, 378 A.2d at 839. Thus, under the totality of the circumstances and an objective standard of review, these facts establish a show of authority or exercise of force such

that a reasonable, innocent person in Appellant's position would have thought he was being restrained. *See Strickler*, 757 A.2d at 890; *Mendenhall*, 715 A.2d at 1119-20; *Matos*, 672 A.2d at 774. At this juncture, this interaction was not "inoffensive conduct between a member of the public and the police" such that no seizure occurred. *See Collins*, 950 A.2d at 1047 n.6. Because the interaction at this point in time progressed beyond a mere encounter to an investigative detention, *see In re D.M.*, 781 A.2d at 1164, we examine whether the police had reasonable suspicion that criminal activity was afoot. *See Ellis*, 662 A.2d at 1047; *Jones*, 378 A.2d at 839.

> When evaluating the existence of reasonable suspicion,
>
>> the reviewing Court weighs the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. To be deemed reasonable under this standard, such a seizure must ordinarily be supported by reasonable suspicion, based upon objective facts, that the individual is involved in criminal activity.

*Commonwealth v. Beaman*, 880 A.2d 578, 582 (Pa. 2005) (citations and some quotation marks omitted). Absent individualized suspicion justifying a seizure, we examine whether the investigative detention fell within the limited circumstances for a suspicionless search and seizure. *Commonwealth v. Mistler*, 912 A.2d 1265, 1271 (Pa. 2006).

Instantly, the juvenile court held that Officer McCarthy had reasonable suspicion that Appellant was engaged in criminal activity. Juvenile Ct. Op. at

5-6. Officer McCarthy responded to a radio call of gunshots at 43rd and Wallace Streets, a high crime area, within a minute of the call. *Id.* Appellant and the other males wore clothing similar to the perpetrators of five recent robberies in the area. *Id.* Upon seeing Officer McCarthy exit from a marked police vehicle and before he even said anything, Appellant, similar to the defendant in *In re D.M.*, fled. *Id.*; *see In re D.M.*, 781 A.2d at 1162. Each fact, on its own, does not necessarily give rise to reasonable suspicion of criminal activity. *See Strickler*, 757 A.2d at 890. Viewed as a whole, however, these facts substantiate the juvenile court's holding that reasonable suspicion of criminal activity was afoot. *See Beaman*, 880 A.2d at 582; *see also In re J.E.*, 937 A.2d at 425 (holding appellate court bound by trial court's finding of facts supported by record and conducting *de novo* review of legal conclusions drawn therefrom).

Because the uncontradicted record supports the factual determinations of the juvenile court and we discern no error of law, we affirm the dispositional order. *See In re J.E.*, 937 A.2d at 425; *Mendenhall*, 715 A.2d at 1119 n.1. Under these facts, the police had the requisite level of reasonable suspicion to justify Appellant's investigative detention pursuant to Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution. *See Ayala*, 791 A.2d at 1208; *In re D.M.*, 781 A.2d at 1164. Accordingly, we affirm the dispositional order.

Dispositional order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2014