J-S34019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JASON STRANGE | |
| Appellant | No. 2770 EDA 2016 |

Appeal from the Judgment of Sentence Dated August 3, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001639-2016

BEFORE: BOWES, J., SOLANO, J., and PLATT, J.*

MEMORANDUM BY SOLANO, J.:                 **FILED SEPTEMBER 11, 2017**

Appellant Jason Strange appeals from the judgment of sentence entered following his convictions for possession with intent to deliver an illegal substance and knowing and intentional possession of an illegal substance[1] on the basis that his motion to suppress should have been granted by the trial court. We affirm.

On June 9, 2016, the trial court held a hearing on Appellant's motion to suppress the illegal drugs recovered by the police at the time of his arrest. Appellant contended that the police improperly seized him without reasonable suspicion or probable cause. At the hearing, Officer Brian

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30) and (a)(16), respectively.

Schneider testified that on November 28, 2015, he had been on patrol with his partner in Philadelphia when he observed William Wible hand money to Appellant in exchange for small unidentifiable objects. Officer Schneider had made several narcotics arrests during his nineteen years with the police, and he suspected that he had witnessed a drug transaction. Officer Schneider and his partner exited their vehicle and approached the men. As they approached, Wible dropped the objects he had just received from Appellant onto the ground, and Appellant dropped a sandwich bag and an amber pill bottle. Officer Schneider yelled "Don't move," and he and his partner arrested Wible and Appellant. The officers recovered eight blue pills that Wible had dropped, and the sandwich bag and pill bottle that Appellant had dropped. The sandwich bag contained 28 blue pills and the pill bottle contained four different blue pills and several large crystal rocks of methamphetamine.[2] Appellant also had $374 on his person at the time of his arrest.

The trial court denied Appellant's motion to suppress, and, following a bench trial, Appellant was found guilty of both charges.[3] Appellant was sentenced to eleven and one-half to twenty-three months' incarceration with five years' consecutive probation. This timely appeal followed.

---

[2] All of the blue pills were determined to be Xanax.

[3] Officer Schneider's partner, Officer John Martin, testified at Appellant's bench trial.

Appellant raises the following issue for our review: "Whether the trial court erred in denying the Motion to Suppress because Appellant was seized without reasonable suspicion prior to discarding drugs?" Appellant's Brief at vi.

Our review of a trial court's suppression ruling is guided by the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the [suppression[4]] record and whether the legal conclusions drawn from those facts are correct. Where the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*In re J.E.*, 937 A.2d 421, 425 (Pa. 2007) (citations omitted).

Appellant argues that the drugs should be suppressed because they were recovered after the police unlawfully seized him. First, according to Appellant, he "was seized by police when two uniformed, armed officers stopped their marked patrol car within ten feet of him and immediately began walking towards him to detain him." Appellant's Brief at xi, 2-4 (citing *Commonwealth v. Bennett*, 604 A.2d 276, 282-83 (Pa. Super. 1992)

---

[4] "[O]ur scope of review is limited to the evidence presented at the suppression hearing." *Commonwealth v. Davis*, 102 A.3d 996, 999 (Pa. Super. 2014) (citation omitted), *appeal denied*, 113 A.3d 278 (Pa. 2015).

("[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled")). Appellant claims that the circumstances "showed an immediate intent on the part of the officers to detain" him. *Id.* at 4.

Second, Appellant contends that at the time he was seized, the officers lacked reasonable suspicion or probable cause to detain him. Appellant's Brief at 4-5. He points out that the officers had not at that point seen any drugs, and there was no testimony establishing the area as a high-crime neighborhood. *Id.* (citing **Commonwealth v. Thompson**, 985 A.2d 928 (Pa. Super. 2009) (holding that probable cause may exist where trained narcotics officers observe the exchange of money for small objects in a high-crime area)). Appellant asserts that the "forced abandonment doctrine" therefore mandates that the drugs he dropped after the officers' illegal actions should have been suppressed. *Id.* at 1-2 (citing **Commonwealth v. Matos**, 672 A.2d 769, 773 (Pa. 1996) (holding that discarded contraband should be suppressed where the seizure was lacking in reasonable suspicion or probable cause)).

The trial court found that (1) at the point the officers exited their vehicle and observed Appellant discard items on the ground, they had

"displayed no physical force or coercive authority towards [Appellant]" and the encounter therefore did not rise to the level of an investigative detention; (2) at the point Officer Schneider yelled "Don't move," he initiated an investigative detention that was supported by reasonable suspicion founded on the observation of the discarded items. *See* Trial Ct. Op., 11/21/16, at 5-6 (unpaginated).

We address Appellant's contentions pursuant to the following framework:

> Our courts have long recognized three levels of interaction that occur between the police and citizens that are relevant to the analysis of whether a particular search or seizure conforms to the requirements of U.S. CONST. amend. IV and [PA.] CONST. art. I, § 8.
>
> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa. Super. 2013) (citation omitted), *appeal denied*, 87 A.3d 320 (Pa. 2014). Only the second and third types of interactions constitute "seizures." *Commonwealth v. Lyles*, 54 A.3d 76, 79 (Pa. Super. 2012), *aff'd*, 97 A.3d 298 (Pa. 2014). In contrast, the first type, "a 'mere encounter,' occurs if the police simply approach a person on a public street in order to make inquiries."

*Commonwealth v. Peters*, 642 A.2d 1126, 1129 (Pa. Super.) (*en banc*), *appeal denied*, 649 A.2d 670 (Pa. 1994).[5]

Our courts apply an objective standard in determining whether the police conduct amounts to a seizure, as opposed to a mere encounter between a citizen and a police officer. *Matos*, 672 A.2d at 774.[6] "In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained." *Commonwealth v. Strickler*, 757 A.2d 884, 890 (Pa. 2000) (footnotes and some citations omitted). Among the

---

[5] As the Supreme Court stated in *Commonwealth v. Reid*:

> Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.

*Reid*, 811 A.2d 530, 545 (Pa. 2002) (brackets and citation omitted), *cert. denied*, 540 U.S. 850 (2003).

[6] Some federal jurisprudence applies a more technical definition of a "seizure" for Fourth Amendment purposes, focusing on whether an application of physical force resulted in taking physical control over the person. *See California v. Hodari D.*, 499 U.S. 621 (1991). In light of the greater privacy protections historically recognized under Article I, Section 8 of the Pennsylvania Constitution, the Pennsylvania Supreme Court has rejected this technical analysis in cases dealing with the abandonment of contraband during police encounters and pursuits. *See Matos*, 672 A.2d at 772-76. The discussion in the text applies the relevant objective standards without regard to those aspects of federal jurisprudence that have been rejected in Pennsylvania. To the extent we conclude that police conduct was valid under the Pennsylvania Constitution, it necessarily conforms to the United States Constitution as well.

factors considered are "the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." **Commonwealth v. Mendenhall**, 715 A.2d 1117, 1119 (Pa. 1998). Still other factors include:

> the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

**Commonwealth v. Collins**, 950 A.2d 1041, 1047 n.6 (Pa.Super.2008) (*en banc*) (citation omitted).

Because the question "whether the police needed some level of requisite cause at the time they initially approached" the defendant is "governed by the type of encounter that the police initiated when they approached" the defendant, **In re D.M.**, 781 A.2d 1161, 1164 (Pa. 2001), we begin our analysis of Appellant's issue by categorizing his encounter with the police. We considered this question in the context of pedestrians' abandonment of contraband upon contact with police in **Commonwealth v. Byrd**, 987 A.2d 786, 791 (Pa. Super. 2009), and **Commonwealth v. Pizarro**, 723 A.2d 675 (Pa. Super. 1998), and those decisions are instructive here.

In **Pizarro**, two officers in a marked patrol car observed the defendant engage in a suspected drug transaction with another man on the street. The

defendant ran to a corner property, retrieved items from a brown paper bag, and then gave the items to the driver of a Buick in exchange for money. As the officers prepared to approach the defendant, a second marked patrol car arrived on the scene. Upon seeing that patrol car, the defendant dropped the brown paper bag on the lawn and fled in the opposite direction from that patrol car. The two officers from the first patrol car followed the defendant into a grocery store and detained him, and they then retrieved the brown paper bag left behind on the lawn, which turned out to contain illegal narcotics. In reversing that trial court's order suppressing the narcotics, we stated:

> A police cruiser passing through the neighborhood on routine patrol does not amount to police coercion compelling the abandonment of contraband. When the cruiser passed through the neighborhood, [the defendant and his cohort] were not deprived of their freedom in any significant way, nor were they placed in a situation in which they could believe reasonably that their freedom of action was restricted by police conduct. None of the police officers engaged in activity which could by any stretch of the imagination be understood to be an act of unlawful coercion. It was [the defendant's] fear of detection, as opposed to any threat or show of force by the police, that induced him to flee the scene. [The defendant's] sensitivity to the risk of police detection does not establish that his abandonment was forced. Hence, we conclude that [the defendant] voluntarily abandoned [the brown paper bag], thus relinquishing any expectation of privacy over the contents therein.
>
> The suppression court found that [the police] lacked justification to detain [the defendant] at the grocery and, therefore, suppressed the narcotics that [the officer] had recovered from the lawn. . . . This conclusion is fundamentally flawed as [the defendant] had abandoned the [narcotics] when he ran from the cruiser before the police officers initiated pursuit. The [narcotics] were not the fruit of an illegal seizure

because it was "seized independently of any unlawful police conduct, i.e., it was abandoned prior to the police showing any interest in [the defendant]."

*Pizarro*, 723 A.2d at 679–80 (citations and emphasis omitted).

In *Byrd*, a police caravan, without sirens, police lights, or high speed, was traveling down a one-way street in the direction opposite of traffic. *Byrd*, 987 A.2d at 787-88. The defendant saw the caravan approaching from about fifty to sixty feet away, and threw something under a parked vehicle. *Id.* The police noticed the defendant's action, frisked and detained him, and then retrieved what he had discarded, which was a handgun. *Id.* We found that the police activity did not coerce the abandonment of the gun and it was therefore admissible into evidence. *Id.* at 793-94. We stated:

> [The defendant] was not deprived of his freedom in any significant way nor could he reasonably believe that his freedom of action was being restricted by police conduct prior to abandoning the handgun. . . . As in *Pizarro*, it is clear to this Court that it was [the defendant's] own fear of detection, as opposed to any threat or show of force by the police, that induced him to abandon the handgun.

*Id.* at 793.

*Byrd* and *Pizarro* establish that where a pedestrian defendant has abandoned contraband in response to an approaching police vehicle, such police behavior does not warrant the suppression of the abandoned evidence. Similar cases establish that where law enforcement officers have merely exited a police vehicle and approached a pedestrian defendant, prior to communicating orders to that defendant or giving chase, no seizure has

occurred. *See, e.g.*, *Commonwealth v. Hall*, 380 A.2d 1238, 1241 (Pa. 1977) (when plainclothes police officers made a u-turn, double-parked their unmarked car, and approached a defendant, and the defendant dropped contraband to the ground when the officers were ten feet away, the actions of the officers did not constitute a seizure and the evidence should not have been suppressed); *see also Lyles*, 97 A.3d at 300-06 (where uniformed officers exited their marked police vehicle, without activating their sirens or lights or brandishing weapons, and began questioning a pedestrian defendant, no seizure had occurred).[7] In light of these decisions, we agree with the trial court that at the time Appellant abandoned the drugs, he had not been seized by the police.

The record shows that when Appellant discarded the contraband, the police officers had merely stopped and exited their vehicle and begun to

---

[7] *See also Commonwealth v. McCoy*, 154 A.3d 813, 818-19 (Pa. Super. 2017) (where marked police car approached defendant and began to exit vehicle, and defendant abandoned contraband and fled in response, no seizure had occurred at the time of abandonment); *In the Interest of Evans*, 717 A.2d 542, 545 (Pa. Super. 1998) (when plainclothes officers exited their unmarked vehicle and defendant abandoned contraband, the evidence was not subject to suppression because "[s]tepping out of a police car is not unlawful police action under any circumstances"), *appeal denied*, 736 A.2d 604 (Pa. 1999); *Commonwealth v. Riley*, 715 A.2d 1131, 1134 (Pa. Super. 1998) (where, "[p]rior to [the defendant's] dropping the [contraband], the police pulled up along the sidewalk in an unmarked car and then exited the vehicle in order to approach [the defendant] and those with him," there was "nothing more than a mere approach by a law enforcement official" that does not need to be supported by any level of suspicion and carries no official compulsion for the citizen to stop or respond), *appeal denied*, 737 A.2d 741 (Pa. 1999).

approach him. They had not physically engaged Appellant, had not issued any verbal commands to Appellant, and had not made any overt displays of force that would cause a reasonable person to conclude that he was not free to leave. ***See generally Strickler***, 757 A.2d at 890; ***Collins***, 950 A.2d at 1047 n.6. The simple action of stepping out of the police car, given these facts, was insufficient to have unlawfully coerced Appellant to abandon his property. ***See Evans***, 717 A.2d at 545. The interaction before Appellant discarded the drugs therefore rose at most to the level of a mere encounter, and need not have been supported by reasonable suspicion or probable cause. ***See Williams***, 73 A.3d at 613.[8] Because Appellant had not been seized at the time he abandoned the narcotics, his motion to suppress was rightfully denied, and we affirm the judgment of sentence imposed by the trial court.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2017

---

[8] We therefore need not decide whether the officers had either reasonable suspicion or probable cause after Appellant abandoned the drugs.

- 11 -