J. S10039/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :    IN THE SUPERIOR COURT OF
                                               :            PENNSYLVANIA
                   v.                  :
                                                 :
P.B.B.,                             :           No. 1482 MDA 2019
                                                 :
              Appellant       :

Appeal from the Judgment of Sentence Entered April 17, 2019,
in the Court of Common Pleas of Lebanon County
Criminal Division at No. CP-38-CR-0000585-2017

BEFORE: PANELLA, P.J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED JUNE 15, 2020**

P.B.B.[1] appeals from the April 17, 2019 judgment of sentence entered in the Court of Common Pleas of Lebanon County after he was convicted in a jury trial of one count each of involuntary deviate sexual intercourse ("IDSI") with a child, indecent assault (complainant less than 13 years of age), corruption of minors, and endangering welfare of children.[2] The trial court imposed an aggregate sentence of 15 to 30 years of incarceration. We affirm.

The trial court set forth the following:

> In late August or early September 2017, K.B. disclosed to her parents that she had been sexually

---

[1] In order to protect the minor victim's identity, we have redacted the caption by removing appellant's name and identifying him only by initials. ***See*** Pa.Super.Ct. I.O.P. 424(A).

[2] 18 Pa.C.S.A. §§ 3123(b), 3126(7), 6301(a)(1)(i), and 4304(a)(1), respectively.

abused by her grandfather, [appellant]. K.B.'s parents reported the disclosure to Children and Youth Services (hereinafter "CYS"). On February 8, 2017, CYS went to the home of K.B. At this time, K.B.'s parents spoke with their middle child, B.B., about why CYS had been at their home. During this conversation, B.B. disclosed to his mother that [appellant] had also sexually abused him. B.B.'s disclosure was reported to CYS.

Due to the disclosures of K.B. and B.B., both children and their younger brother, S.B., were scheduled for forensic interviews at the Children's Resource Center. During these interviews, both K.B. and B.B. disclosed being sexually abused by [appellant]. S.B. did not make any disclosures. Both K.B. and B.B.'s interviews go into detail about the alleged abuse.

Due to the information disclosed on B.B.'s interview, a search warrant was obtained and executed on February 27, 2017. At the same time, Detective Todd Hirsch prepared and filed the Criminal Complaint in this matter. An arrest warrant was issued on February 27, 201[7]. On February 28, 2017, Detective Hirsch called [appellant] and asked him to come into the station for an interview. [Appellant] complied and the interview between [appellant] and Detective Hirsch was audio and video recorded. At the beginning of the interview, Detective Hirsch informed [appellant] that he was not under arrest and read him his ***Miranda***[3] warnings. When Detective Hirsch advised [appellant] that he had the right to have an attorney present, [appellant] stated, "[B]ased on where this is going now, I am going to have a lawyer." After clarification of this statement and another set of ***Miranda*** warnings, the interview continued. Detective Hirsch continued to ask questions until [appellant] said, "I think I'm done." At this point Detective Hirsch asked [appellant], "So you want a lawyer at this time?" [Appellant] replied, "I think I'm going to lawyer up." Detective Hirsch then

---

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

stopped the interview and [appellant] was placed under arrest.

[Appellant] was charged with [the aforementioned crimes]. The parties filed various pretrial matters including [appellant's] request to suppress the statements made during the interview with Detective Hirsch on February 28, 2017. The [trial c]ourt denied [appellant's] motion and decided the cases of B.B. and K.B. should be separated and tried individually. The first trial with K.B. resulted in a hung jury and the [trial c]ourt declared a mistrial.

Prior to trial, [appellant] filed a Motion in Limine regarding the allegations made by K.B. On October 22, 2018, the [trial c]ourt heard argument on [appellant's] motion. During his argument, [appellant] outlined his concerns that B.B.'s first disclosure to his mother, [E.B.] (hereinafter "Mother"), was a result of [Mother's] speaking to B.B. about CYS visiting the home.

The [trial c]ourt decided Mother could testify that CYS was in the home, but she could not reference why they were in the home or anything about the allegations of K.B. This was allowed to provide some type of context as to why B.B. made a sudden disclosure to [M]other about [appellant]. The [trial c]ourt allowed the Commonwealth to introduce evidence that: (1) CYS was at the home to investigate a complaint; (2) Mother explained to B.B. what the complaint was about; (3) While doing this, she brought up the concepts of good touch and bad touch; (4) That as this was occurring, B.B.'s demeanor changed and he made a disclosure; and (5) what the actual disclosure was. At [t]rial, Mother made the following testimony:

> [CYS] had been to our house in the day prior, so we took [B.B.] downstairs to make sure he had an understanding of the visit, to make sure he understood why it was [CYS's] job to come to the house and talk to him . . . [.] It seemed a little out of sorts to have a stranger come to the

house and want to speak to you, see your room, take your photo, so we just gave him an explanation of why it was their job to do so. . . [.]

As I'm talking about the body and your body as being your body, his head starts to go down. And then I started to hear sniffling and nose-snotting, and I say "[B.B.], what is going on? What is wrong?" and then he said, you know, his Pop-Pop touched him in these ways. . . [.] And he said that Pop-Pop would tickle him, and lay on top of him and not get off of him. And he said he would lay on top of him and do what our dog does to our leg, which is like a dog-humping motion that a dog does to your leg.

At this point, a sidebar was held and [appellant] made an objection to the testimony and requested a mistrial due to Mother's testimony. The objection was overruled, Mother's testimony was not stricken from the record, and no curative instruction was given.

During the [t]rial, B.B. testified about the abuse that occurred. B.B. testified [appellant] would hurt him by "putting his front part up my butt" and would use a "white lotion on his boy part" that [appellant] would get from a desk drawer near where the abuse occurred. B.B. also testified that while the abuse had occurred more than once until the age of ten, he was unable to remember how many times the abuse had happened. B.B. was twelve at the time of testimony.

During deliberations, the [j]ury asked whether CYS was in the home of B.B. before disclosure and if so, why were they there. The [trial c]ourt informed the [j]ury that this was information they could not have and that they could not make a determination solely based on the trial c]ourt's decision to not give the [j]ury this information. The jury convicted [appellant] of all charges. Sentencing was pushed out until 2019 so the parties could have a second trial involving K.B.

> In March 2019, a second trial involving K.B. was held. Again, the jury was unable to reach a unanimous decision and the [trial c]ourt declared a second mistrial. After a discussion with the family, the decision was made to dismiss the matter involving K.B. and move forward with sentencing for the trial of B.B.

Trial court opinion, 8/13/19 at 2-5 (record citations omitted; ellipses in original).

Following imposition of sentence, appellant filed post-sentence motions, which the trial court denied. Appellant then filed a timely notice of appeal. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. The trial court then filed an order of court stating that it addressed all of appellant's claimed errors in the August 13, 2019 opinion that it filed when it denied appellant's post-sentence motions. (Order of court, 9/19/19.)

Appellant raises the following issues for our review:

[1.] Did the trial court err in denying [] appellant's pre-trial motion regarding the suppression of his statements after invoking his right to counsel?

[2.] Did the trial court err in overruling [appellant's] timely objection and request for a mistrial regarding the testimony of [Mother] that [CYS was] in the home of B.B. before his disclosure of these underlying allegations?

[3.] Did the jury in this matter err when finding [] appellant guilty of all counts without sufficient evidence to support said conviction?

[4.] Did the jury in this matter err and reach a verdict that was contrary to and against the weight of the evidence?

[5.] Did the trial court err when not taking into consideration all the requisite factors when imposing its sentence?

Appellant's brief at 7 (extraneous capitalization omitted).

Appellant first complains that the trial court erred when it denied his motion to suppress statements made to Detective Hirsch. Appellant contends that when he said, "Based on where this is going, I am going to have a lawyer," he invoked his right to counsel, but Detective Hirsch did not cease the interrogation. (Appellant's brief at 23.)

Our standard of review for challenges to the denial of a suppression motion is as follows:

[We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-784 (Pa.Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013) (citations omitted).

"The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." *Commonwealth v. Neal*, 151 A.3d 1068, 1071 (Pa.Super. 2016) (citation omitted). "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-1048 (Pa. 2012) (citations omitted); *see also* Pa.R.Crim.P. 581(H).

At the outset, we note that the trial court determined that appellant was not in custodial interrogation at the time that he made his statements. (Trial court opinion, 8/13/19 at 7.) This was legal error.

> Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of . . . *Miranda* rights. *Commonwealth v. DiStefano*, 782 A.2d 574, 579 (Pa.Super. 2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way." *Miranda*, *supra* at 444, 86 S.Ct at 1612, 16 L.Ed.2d at 706. "The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Commonwealth v. Gaul*, 590 Pa. 175, 180, 912 A.2d 252, 255 (2006), *cert. denied*, 552 U.S. 939, 128 S.Ct. 43, 169 L.Ed.2d 242 (2007). Thus, "Interrogation occurs where the police should know

that their words or actions are reasonably likely to elicit an incriminating response from the suspect." ***Commonwealth v. Ingram***, 814 A.2d 264, 271 (Pa.Super. 2002), ***appeal denied***, 573 Pa. 671, 821 A.2d 586 (2003). "In evaluating whether ***Miranda*** warnings were necessary, a court must consider the totality of the circumstances . . . ." ***Gaul***, ***supra***.

***Commonwealth v. Gonzalez***, 979 A.2d 879, 888-889 (Pa.Super. 2009),

quoting ***Commonwealth v. Williams***, 941 A.2d 14, 30 (Pa.Super. 2008)

(***en banc***).

> Whether a person is in custody for ***Miranda*** purposes depends on whether the person is physically denied of [her] freedom of action in any significant way or is placed in a situation in which [she] reasonably believes that [her] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes [her] freedom of action is being restricted.
>
> ***Commonwealth v. Clayton Williams***, 539 Pa. 61, 74, 650 A.2d 420, 427 (1994) (internal citations omitted). ***See also Commonwealth v. Mannion***, 725 A.2d 196, 202 (Pa.Super. 1999) (***en banc***) (stating whether person is in custody for ***Miranda*** purposes must be evaluated on case-by-case basis with due regard for facts involved); ***Commonwealth v. Peters***, 434 Pa.Super. 268, 642 A.2d 1126, 1130 (1994) (***en banc***), ***appeal denied***, 538 Pa. 668, 649 A.2d 670 (1994) (stating: "Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the suspect was

> transferred against [her] will, how far, and why;
> whether restraints were used; the show, threat or use
> of force; and the methods of investigation used to
> confirm or dispel suspicions"; fact that defendant was
> focus of investigation is relevant for determination of
> whether defendant was in "custody" but does not
> require *per se Miranda* warnings).

*Williams*, 941 A.2d at 30-31 (brackets in original).

Here, the record reflects that Detective Hirsch contacted appellant and asked to meet with him. (Notes of testimony, 10/26/17 at 55.) Appellant agreed. (*Id.*) The meeting took place in an office "located a short distance down the hallway from the [District Attorney's] office." (*Id.* at 56.) The digital video recording ("DVR") of the interview, which was admitted into evidence at the suppression hearing as Commonwealth Exhibit 3, reveals that the room in which the interview took place was very small, and it appears as though the door was closed when the interview took place. In addition to Detective Hirsch, a caseworker from CYS was present. (*Id.*) When the three entered the room, appellant was told to sit down at the table, which he did. (*Id.* at 57; *see also* DVR, Commonwealth Exhibit 3.) Detective Hirsch told appellant that a microphone and camera were already in the room and asked if he could audio and video record the interview. (Notes of testimony, 10/26/17 at 57.) Appellant agreed. (*Id.*) Detective Hirsch then provided appellant with *Miranda* warnings. (*Id.* at 59; *see also* DVR, Commonwealth Exhibit 3.)

- 9 -

Under the totality of the circumstances, the detention was coercive and the functional equivalent of a formal arrest.[4]  Therefore, the trial court erred when it concluded appellant was not in custody at the time he made his statements.

We must now determine whether appellant invoked his right to counsel when he stated, "Based on where this is going now, I am going to have a lawyer."

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.  The [United States Supreme Court has] explained that an accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.  The purpose behind this rule is to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights.

---

[4] We note that in addition to arguing that he was in custodial interrogation, appellant also claims that because Detective Hirsch had initiated criminal proceedings against him prior to the interview, appellant's Sixth Amendment right to counsel attached.  (Appellant's brief at 20-27.)  In *Commonwealth v. McCoy*, 975 A.2d 586 (Pa. 2009), our supreme court affirmed the legal principle that the Sixth Amendment right to counsel attaches at the initiation of adversarial judicial proceedings.  Adversarial judicial proceedings trigger when a criminal defendant initially appears before a judicial officer, learns of the charge against him, and his liberty is subject to restriction.  *Id.* at 590.  Here, although Detective Hirsch had filed a criminal complaint, appellant had not appeared before a judicial officer, learned of the charges against him, and his liberties had yet to be restricted.

> The U.S. Supreme Court has held that in order to avoid difficulties of proof and to provide guidance to officers conducting interrogations, the determination of whether the right to counsel was invoked by the accused is an objective inquiry. Effective assertion of the Fifth Amendment right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police. However, if the accused makes an ambiguous or equivocal reference that would lead an officer, in light of the circumstances, to believe only that the suspect might be invoking the right to counsel, police interrogation need not cease. The accused must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.

*Commonwealth v. Martin*, 101 A.3d 706, 725-26 (Pa. 2014), *cert. denied sub nom*. *Martin v. Pennsylvania*, 136 S.Ct. 201, 193 L. Ed. 2d 155 (2015) (quotation marks, emphasis, and internal citations omitted).

Here, the record reflects that at the beginning of the interview, Detective Hirsch read appellant his *Miranda* warnings and went over the *Miranda* warnings form, which appellant signed. (Notes of testimony, 10/26/17 at 59; *see also* DVR, Commonwealth Exhibit 3.) During this time, appellant stated, "Based on where this is going now, I am going to have a lawyer." (Notes of testimony, 10/26/17 at 67-68; *see also* DVR, Commonwealth Exhibit 3.) At that point, Detective Hirsch asked appellant if he was invoking his right to remain silent or if he wanted the interview to continue. (DVR, Commonwealth Exhibit 3.) Appellant stated that he would

continue the interview at which time Detective Hirsch again provided appellant with his *Miranda* warnings. (*Id.*)

The trial court determined that appellant's statement, that "based on where this is going now, I am going to have a lawyer," was ambiguous because it "implied that [appellant] would acquire counsel at some point in the future." (Trial court opinion, 8/13/19 at 7.) There is support in the record for that conclusion. (*See* DVR, Commonwealth Exhibit 3.) We further note that

> In *Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), the United States Supreme Court explained that, when invoking a right to counsel under *Miranda*, a suspect must do so unambiguously. *Id.* at 459. If a suspect makes a statement regarding the right to counsel that is ambiguous or equivocal, the police are not required to end the interrogation, nor are they required to ask questions designed to clarify whether the suspect is invoking his *Miranda* rights. *Id.* at 461-62. In *Davis*, the Court concluded that the suspect's statement, "Maybe I should talk to a lawyer," was not a request for counsel, and, therefore, law enforcement agents were not required to cease questioning. *Id.* at 462.

*Commonwealth v. Frein*, 206 A.3d 1049, 1065 (Pa. 2019).

Here, when appellant made the statement, "Based on where this is going now, I am going to have a lawyer," Detective Hirsch did cease questioning in an attempt to clarify whether appellant was invoking his *Miranda* rights. Appellants' constitutional right to counsel was not violated.

Appellant next complains that the trial court abused its discretion when it denied his motion for a mistrial after Mother testified that CYS was present in the family home prior to B.B.'s disclosure of sexual abuse.

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with the law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Tucker*, 143 A.3d 955, 961 (Pa.Super. 2016) (citations omitted; brackets in original). The grant of a mistrial is an extreme remedy that is required "only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Commonwealth v. Johnson*, 719 A.2d 778, 787 (Pa.Super. 1998) (*en banc*) (citation omitted).

Here, the record reflects that the trial court heard pre-trial oral argument on defense counsel's motion *in limine* to preclude the Commonwealth from eliciting testimony from Mother that CYS visited the family home prior to B.B.'s disclosure because it was investigating sexual abuse allegations lodged against appellant by B.B.'s sister, K.B. (Notes of testimony, trial, 10/22/18 at 10-25.) Following oral argument, the trial court ruled that:

> [Mother] can testify that [CYS was] there to investigate an allegation, a report, and [Mother] was explaining what the deal was and that is when [B.B.] broke down and cried. That is when he said what he said. . . . I think it gets you to the point that there was a complaint made, and no one has to know who that was about. . . . You can say there was a complaint made with [CYS] and what the complaint was. You can say someone made sexual abuse allegations and they were there to investigate that. We just can't say that it dealt with [K.B.]

*Id.* at 24.

At trial, Mother testified on direct examination as follows:

> Q.   So let's talk about this disclos[ure]. Can you give the jury an idea of what was going on; like what did [B.B.] tell you, what was happening?
>
> A.   [CYS] had been to our house in the day prior, so we took [B.B.] downstairs to make sure he had an understanding of the visit, to make sure he understood why it was [CYS's] job to come to the house and talk to him and --
>
> Q.   Can I stop you for a second. Was he asking you questions?

> A. Not that I recall, just that it seemed a little out of sorts to have a stranger come to the house and want to speak to you, see your room, take your photo, so we just gave him an explanation of why it was their job to do so.

Notes of testimony, trial, 10/23/18 at 102-103.

At this point, appellant's counsel requested a sidebar. At sidebar, appellant's counsel objected and advanced the following argument:

> Your Honor, at this point in time I'm going to object to the question and the information given. I think it's well within what we talked about yesterday with regard to what was going to be disclosed to this jury as a result of this disclosure and what was out of bounds. I think the line was -- in my opinion, the line has been crossed as a result of that, and I think this jury has heard too much with regard to why [CYS] was at the home. I'm asking for a mistrial as a result of that.

*Id.* at 103-104.

The record further reflects that the trial court denied appellant's motion for mistrial and permitted the Commonwealth to briefly lead the witness to assure that she did not testify as to the reason why CYS was visiting the home. (*Id.* at 104.) Our review of the record demonstrates that the witness never testified as to the reason CYS was visiting the home.

Appellant nevertheless contends that the trial court abused its discretion in denying the motion for mistrial because the jury was "left to wonder why and how it came that CYS was in the home of [B.B.] before [B.B.] even disclosed any alleged wrongdoing at the hands of [a]ppellant." (Appellant's brief at 28.) To support his claim that the prejudice may reasonably be said

to have deprived appellant of a fair and impartial trial, appellant notes that during deliberations, the jury submitted the following question: "[Was CYS] in [B.B.'s] home before his disclosure?" and, "[I]f so, why?" (Appellant's brief at 29; *see also* notes of testimony, trial, 10/25/18 at 109.)

Questions from the jury are common and do not create a presumption of jury confusion. ***Commonwealth v. Weaver***, 768 A.2d 331, 335 (Pa.Super. 2001) (citation omitted). Where a jury returns with a question, the trial court has a duty to provide additional instructions as it deems necessary for clarification. ***Id.***

Here, the trial court brought the jury back and answered the question, as well as two others not relevant to this appeal, as follows:

> Okay folks, we assembled Counsel and I read your questions to them. They are now a part of the record. The steno is here and took those down.
>
> And the answer to you simply is this: I can't help you with these questions and I can't tell you the answers. That is the simple answer.
>
> As it relates to the trial testimony, both counsel made objections and some were sustained and overruled, that is not [--] they don't keep a running track of that. That is not a win or a lose thing. That is an, is evidence relevant thing. And as it relates to some of these questions that you gave me, there was a prior discussion on should this come in, is this relevant, judge you decide. I made a ruling, and it didn't come in. You can't take anything from that, much like you can't take anything from someone making an objection that I either overruled or sustained. You can't read into that.

***Id.*** at 112-113.

Our review of the record supports the trial court's conclusion that because Mother did not testify as to the reason why CYS was in the home prior to B.B.'s disclosure of sexual abuse, there was no prejudicial event that warranted a mistrial. The record also supports the trial court's conclusion that when the jury inquired as to whether CYS was in the home prior to B.B.'s disclosure and, if so, why, the trial court properly instructed the jury that it could not answer the question and that the jury was not permitted to "read into that." The law presumes that the jury follows the trial court's instructions. *Commonwealth v. Rush*, 162 A.3d 530, 539-540 (Pa.Super. 2017) (citation omitted). We discern no abuse of discretion.

Appellant next challenges the sufficiency of the evidence to sustain his convictions. It is well settled that when challenging the sufficiency of the evidence on appeal, that in order to preserve that issue for appeal, an appellant's Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient. *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009), *appeal denied*, 3 A.3d 670 (Pa. 2010) (citation and internal quotation marks omitted).

In his Rule 1925(b) statement, appellant frames his sufficiency challenge as follows: "Based on the testimony and evidence offered by the Commonwealth, the [j]ury did not have sufficient evidence to convict [appellant]." (Appellant's "statement of matters complained of on appeal pursuant to 1925(b)," 9/18/19 at 1, ¶ 3 (full capitalization omitted).) Because

appellant failed to specify the element or elements of the crime or crimes upon which he now claims the evidence was insufficient, appellant waives this issue on appeal.  *See Gibbs*, 981 A.2d at 281.

Nevertheless, a reading of appellant's brief on this issue reveals that appellant challenges the credibility of the victim and offers a theory as to how appellant's DNA evidence was found on a couch.  (Appellant's brief at 9.)  In so doing, appellant challenges the weight of the evidence, not its sufficiency. *See Commonwealth v. Wilson*, 825 A.2d 710, 713-714 (Pa.Super. 2003) (reiterating that a sufficiency of the evidence review does not include a credibility assessment; such a claim goes to the weight of the evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super. 1997).

In his fourth issue, appellant raises a weight of the evidence challenge.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted; emphasis omitted).

J. S10039/20

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Devine*, 26 A.3d 1139, 1146 (Pa.Super. 2011).

Here, appellant sets forth the same challenges to the victim's credibility and offers the same theory as to how appellant's DNA evidence was found on a couch that he set forth in his previous challenge. In so doing, appellant invites this court to assess witness credibility and reweigh the evidence. "The jury, as fact-finder[, however,] had the duty to determine the credibility of the testimony and evidence presented at trial." *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa.Super. 2016) (citation omitted). Appellate courts cannot and do not substitute their judgment for that of the fact-finder. *See id.* Here, a jury of appellant's peers weighed the evidence and assessed the credibility of the witnesses and determined that the Commonwealth's evidence proved beyond a reasonable doubt that appellant committed IDSI, indecent assault, corruption of minors, and endangering the welfare of children. After carefully reviewing the record, we conclude that the jury's verdict was not so contrary to the evidence so as to shock one's sense of justice. Rather, our review of the record supports our conclusion that the trial court properly exercised its discretion in denying appellant's weight of the evidence claim.

In his final claim, appellant challenges the discretionary aspects of his sentence.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Moury*, 992 A.2d 162, 169-170 (Pa.Super. 2010) (citation omitted; brackets in original).

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider

> and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted; brackets in original).

Here, appellant filed a timely notice of appeal and a motion to reconsider the sentence. Appellant's brief, however, does not include a Rule 2119(f) statement. Because the Commonwealth did not object, we will proceed to determine whether appellant raises a substantial question. *See Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa.Super. 2004) (reiterating that "when appellant has not included a Rule 2119(f) statement and the appellee has not objected, this [c]ourt may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate, or enforce the requirements of 2119(f) *sua sponte*, *i.e.*, deny allowance of appeal.").

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003) (citation omitted). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, 752 A.2d at 912-13.

Here, appellant concedes that his sentence falls within the sentencing guidelines range. (Appellant's brief at 40.) Nevertheless, appellant complains that "this sentence is in the top end of the standard range and the [trial] court offered little explanation as to why it chose the sentence it did for a seventy-four year old man with no prior criminal record and a remarkable resume of community service." (*Id.*)

Generally, a sentence that falls within the sentencing guidelines fails to raise a substantial question. *See Commonwealth v. Maneval*, 688 A.2d 1198, 1199-1200 (Pa.Super. 1997). Moreover, an argument that the trial court failed to consider mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review. *Commonwealth v. Hanson,* 856 A.2d 1254, 1257-1258 (Pa.Super. 2004) (citation omitted). Furthermore, the trial court had the benefit of a pre-sentence investigation report and was certainly aware of all relevant information and alleged mitigating factors. "Our Supreme Court has ruled that where pre-sentence reports exist, the presumption will stand that the sentencing judge was both aware of and appropriately weighed all relevant information contained therein." *Commonwealth v. Griffin*, 804 A.2d 1, 8 (Pa.Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. denied*,

45 U.S. 1148 (2005).  Therefore, appellant has failed to raise a substantial question for our review.[5]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2020

---

[5] Appellant also complains that he is entitled to a lesser sentence because the trial court imposed sentence when he was 74 years old.  (Appellant's brief at 40.)  Just as we noted in **Commonwealth v. Hoag**, 665 A.2d 1212, 1214 (Pa.Super. 1995), that a defendant is not entitled to a "volume discount" for multiple crimes by having all sentences run concurrently, appellant is not entitled to a seasonal discount because he committed his crimes in the winter of his life.